THE LAW OFFICES OF
# FAUSTO E. ZAPATA, JR., P.C.

Broadway Chambers Building　　　　　　　　　　　　　　　　　　　Tel: 212-766-9870 / Fax: 212-766-9869
277 Broadway, Suite 206　　　　　　　　　　　　　　　　　　　　　　　　Email: fz@fzapatalaw.com
New York, New York 10007　　　　　　　　　　　　　　　　　　　Web: www.LaborEmploymentLawFirm.com

March 24, 2021

Lorna G. Schofield
United States District Judge
United States District Court
Southern District of New York
500 Pearl Streetπ
New York, New York 10007

　　　　　　　　　　　　　　　Re:　Jose Ramirez v. M.L. San Jose Enterprises, Corp.
　　　　　　　　　　　　　　　　　　(d/b/a Liberato Restaurant), SDNY Case No. 19
　　　　　　　　　　　　　　　　　　Civ. 3429 (LGS)

Dear Judge Schofield,

　　　　We represent the Plaintiff in the above referenced matter.

　　　　This letter is submitted to obtain approval of a negotiated settlement in a lawsuit involving claims under the Fair Labor Standards Act.  Enclosed, please find the proposed Settlement Agreement in connection with the above referenced matter, which is a fair and reasonable settlement for the reasons discussed below.  See, Exhibit "A" for a copy of the proposed agreement.

　　　　This action was commenced under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). The Plaintiff alleges that the Defendants violated the wage and hour laws and that the Defendants owes the Plaintiff unpaid minimum and overtime wages, liquidated damages, and penalties.

　　　　The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor.  See 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]).

　　　　Courts have interpreted this limitation to mean that parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor.  See Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 200 (2d Cir. 2015) (Second Circuit held that F.R.C.P. 41(a)(1)(A)(ii) "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."); Yunda v. SAFI-G, Inc., 2017 U.S. Dist. LEXIS 65088 (S.D.N.Y. 2017) (bifurcated settlements, wherein FLSA claims are submitted to the court for approval, but parallel NYLL claims are not, is permissible because NYLL

parallel claims do not require court approval); *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.,* No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007); *compare with Gaughan v. Rubenstein*, 2017 U.S. Dist. LEXIS 107042, 2017 WL 2964818 (S.D.N.Y. 2017) (pre-litigation FLSA settlements do not require approval of the district court or the DOL if the plaintiff was represented by counsel).

Courts considering motions to approve FLSA settlements, i.e., Cheeks motion, must be satisfied that the proposed settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc*., 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). For a court to find a settlement is fair and reasonable, "the parties must provide enough information for the court to examine the bona fides of the dispute. The employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages." *Id*. (internal quotations omitted).

To determine whether a settlement is fair and reasonable under the FLSA, courts consider the totality of circumstances, including but not limited to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020), quoting, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

**I. Plaintiff's range of possible recovery**

Plaintiff worked for Defendants M.L. San Jose Enterprises and Antonio Manuel Liberato (hereinafter collectively referred to as "Defendants") as a food delivery worker from in or around 2005/2006 through in or around October 2018. Plaintiff was hired by Defendants after he responded to a help wanted sign posted in front of Defendants' restaurant stating that Defendants were hiring delivery workers. Defendants' sign stated that all prospective candidates were required to have and use their own bicycle or motor vehicle in order to be considered for the food delivery worker position. In Plaintiff's case, he used his vehicle primarily in connection with his employment with Defendants and to the end, he spent approximately $40 to $60 each week on gasoline, approximately $190 per month for car insurance, and varying amounts to maintain his vehicle, including purchasing tires, oil, brakes, filters, antifreeze, windshield wiper fluid, paying parking tickets, etc.

As food delivery worker, Plaintiff's primary duties were to deliver food to Defendants' customers, via motor vehicle.

During the time that Plaintiff worked for Defendants, he was paid less than the New York State statutory minimum wage when he worked for Defendants, but more than the FLSA minimum wage for all but a brief period in or around January 2017. During this period, Plaintiff was paid an hourly rate of $9 per hour. However, Defendants took a tip credit of $1.50 an hour

and a meal credit of $2.50 per day when Plaintiff worked eight-hour shifts, effectively paying Plaintiff a net of $7.18 an hour at a time when the FLSA minimum wage was $7.25 an hour and the New York State minimum wage was $11 an hour.

During the FLSA period, Plaintiff is owed $54.37 in overtime wages. The bulk of Plaintiff's damages related to Plaintiff's New York Law claims, which were based on higher minimum wages, spread-of-hour pay, notice and recordkeeping and pay statement violations, and allegations that Defendants offset the wages that Plaintiff was owed, under New York Labor Law, in excess of the statutory limitations, which nevertheless, did not reduce Plaintiff's wages below the FLSA minimum wage.

At most, Plaintiff's possible range of recovery, with respect to his FLSA claims, is $124.98 in unpaid minimum wage, $67.50 in overtime wages, liquidated damages, not including attorneys' fees costs; and the overwhelming majority of Plaintiff's claims relate to his New York Labor claims.[1] However, Plaintiff also claimed that his wages were reduced below minimum wage as a result of his automobile expenses attributable to performing his job duties; Plaintiff sought to recover $20 per day, which would increase Plaintiff's damages by approximately $12,940.00.

Finally, in terms of costs, Plaintiff expended $986.88 in prosecuting this case, not including attorneys' fees.

## II. The extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses

Counsel for the parties are experienced in litigating and resolving wage-and-hour matters. The parties engaged in extensive negotiations beginning in or around December 2020 and after much discussion regarding the strengths and weaknesses and risks of going forward, the parties made a reasoned decision to settle this lawsuit due to the uncertainties of litigation and the likelihood that the legal fees associated with the Defendants' legal expenses in defending itself through a dispositive motion or trial would exceed the settlement amount.

## III. The seriousness of the litigation risks faced by the parties

Parties to litigation face risk and expenses that are inherent in litigation, including appeals, and post-judgment collection proceedings. Here, the Plaintiff also faces the risk of no recovery due to Defendants' precarious financial circumstances, which have changed considerably since the start of litigation, a lower recovery or a delayed recovery because Defendants have may not have the resources to satisfy a judgment. On the other hand, the Defendants acknowledged, during the course of settlement discussions, that it may have exposure associated with the Plaintiff's claims.

---

[1] Plaintiff's damages attributable to his New York Labor Law claims are as follows: (1) unpaid overtime wages, $32,379.50; (2) unpaid straight time wages, $41,972.33; (3) undisclosed service fees associated with deliveries, $10,360.00; (4) unpaid spread of hour pay, $6,879.00; (5) car usage fee for period outside of FLSA 3-year window, $18,440.00; (6) notice and recordkeeping violations, $5,000.00; (7) pay statement violations, $5,000.00; (8) interest pursuant to CPLR §§ 5001 et seq.; and, (9) liquidated damages, $132,313.33.

**IV. Whether the settlement agreement is the product of arm's-length bargaining between experienced counsel**

After discussing the strengths and weaknesses and risks of going forward at a settlement conference, the parties made the reasoned decision to settle this lawsuit due to the uncertainties of litigation and the likelihood that the legal fees associated with Defendants' legal expenses in defending itself through a dispositive motion or trial would exceed the settlement amount.

**V. The possibility of fraud or collusion**

Counsel who are experienced in litigation matters, including wage and hour litigation under the FLSA, represented the parties. Counsel for both sides utilized their experience and thoroughly analyzed the claims and defenses, determined the range of potential damages for Plaintiff, and engaged in arms-length negotiations to achieve a fair resolution for the parties. The parties themselves heavily were involved in the settlement negotiations and had the opportunity to carefully review the terms of the settlement agreement before execution.

Thus, there was no possibility of fraud and collusion throughout the process.

Plaintiff's counsel represent to the Court that the settlement agreement is fair to the Plaintiff, reasonably resolves bona fide disagreements between the Plaintiff and Defendants about the merits of the Plaintiff's claims; and demonstrates a good faith intention by the parties that their claims for liability and damages be fully and finally resolved and not re-litigated in the future.

On this basis, the settlement reached was fair and reasonable.

The parties agreed to settle all of the claims, including statutory attorneys' fees, for $50,000.00. The settlement is to be broken down as follows:

a. $33,662.30 for all wage claims, including liquidated damages, including Plaintiff's FLSA claims;
b. $16,337.70 as attorneys' fees and $986.88 in costs payable to "The Law Offices of Fausto E. Zapata, Jr., P.C." and "Law Offices of Retu Singla, P.C., A Working People's Law Center"

Under the terms of the agreement, the Defendants will make an initial payment of $25,000.00 within sixty days of the dismissal of the instant matter, and continuing every 30 days thereafter, Defendants will pay $1,500 per month for fifteen consecutive months with a final payment on the 16th month of $2,500. Plaintiff and Plaintiff's counsel will each take a 50% portion of the structured payments until Plaintiff's counsel are compensated as described above.

**VI. Attorneys' Fees**

Under the Fair Labor Standards Act and New York's Labor Law, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees.

In the FLSA context, attorneys' fees arise in three contexts: (1) applications following a ruling in favor of the plaintiff; (2) following a settlement where the agreement reserves the question of fees and costs for the court to decide; (3) settlement incorporating attorneys' fees and costs into the settlement amount. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 601 (2d Cir. 2020).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020), *citing, Cheeks*, 796 F.3d at 206.   "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' "" *Fisher,* 948 F.3d at 606.  On that note, the Second Circuit has held "[n]either the text nor the purpose of the FLSA, however, supports imposing a proportionality limit on recoverable attorneys' fees. With respect to the statutory text, FLSA simply provides for a 'reasonable attorney's fee to be paid by the defendant'… Nothing in this clause or the surrounding text provides for the conclusion that a 'reasonable attorneys fee must be a 'proportional' fee." *Fisher*, 948 F.3d at 603 (finding that limiting attorneys fees to 33% of total settlement contravenes the FLSA, a uniquely protective statute, because attorneys would be discouraged from litigating low value cases and these plaintiffs would be left with little legal recourse.)

To assess reasonableness of fees and cost applications, courts require that fee applications be supported by adequate documentation.  *Fisher*, 948 F.3d at 600, *citing, N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983).  This includes contemporaneous time records for attorney time that details the nature of the work performed. Id.

With regards to statutory attorneys fees, courts in this District routinely award hourly attorney fee rates ranging from approximately $175 to $500—depending on experience—for attorneys working on FLSA litigation. *See Calicia v. T&H Village Food Corp d/b/a Village Diner, et al.*, 12 Civ. 3150 (E.D.N.Y. 2012) (in this case, Plaintiff's counsel was awarded approximately $500 an hour in an FLSA case; *Kahlil v. Original Old Homestead Rest.,* 657 F. Supp. 2d 470, 476 (S.D.N.Y. 2009) (awarding hourly rate of $400 for a "senior lawyer with 25 years experience"); *Ferrara v. CMR Contracting, LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) ("In recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates and $70 to $100 for paralegal assistants"); *Toussie v. County of Suffolk*, 2011 U.S. Dist. LEXIS 58179, 2011 WL 2173870, at *2 (E.D.N.Y. May 31, 2011) (awarding $400 to an attorney with 7 years experience); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507-08 (S.D.N.Y. 2012) (awarding fees to Plaintiffs' counsel's firm at rates of $175/hour for associate work and $350/hour for partner work); *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010).

"When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." Fisher, 948 F.3d at 606.

Here, my offices' standard hourly billing rate for my time is $500.00 an hour and I worked 140 hours in prosecuting Plaintiff's FLSA claims. I have reviewed our office's billing

5

records and confirmed that time/resources devoted to this matter were reasonably and necessarily performed to litigate this matter effectively. I have acted as the lead counsel responsible for the prosecution of this action and also maintained contemporaneous time records reflecting the time spent on this matter.  See, Exhibit "B" for a copy of the aforementioned.  We do not have copies of Ms. Singla's time records; however, she was instrumental in the formulation of legal strategy and was involved in assisting us throughout this litigation.

Additionally, our office incurred out of pocket expenses in the amount of $986.88 in connection with the filing fees and personal service of papers.  See, Exhibit "C" for a copy of the aforementioned. My firm normally requires that our wage and hour clients pay the filing fee, and other customary litigation costs, from their recovery.

I am the founder of The Law Offices of Fausto E. Zapata, Jr., P.C., a small firm in Manhattan, founded in 2005, that has almost exclusively represented individual plaintiffs in a wide range of labor and employment issues from the inception of the firm.  Moreover, I have 19 years of experience in the field of labor and employment law and, to that end, I have litigated a variety of labor and employment matters in both Federal and New York State courts.

In the recent past, I have successfully handled numerous wage and hour matters ranging from individual claims to collective actions involving over 400 plaintiffs. *See, Ramos v. The City of New York*, S.D.N.Y. 13 Civ. 9225 (KBF); *Ozpinar, et al. v. L & G Delite, LLC, et al.,* E.D.N.Y. 13 Civ. 7368 (SJ)(CLP) (court approved 40% contingency fee in settlement); *Stephens v. The City of New York, et al.*, S.D.N.Y. 13 Civ. 2364 (KBF); *Olga Quintana v. United Building Maintenance Associates, Inc.*, E.D.N.Y. 11 Civ. 5708 (KBF) (court approved 40% contingency fee in settlement); *Jehle v. The Christophers*, *et al*. S.D.N.Y. Index No. 14 CV 2284 (court approved 40% contingency fee in settlement); *Sanchez v. Metro Terminals Corp.*, et al., E.D.N.Y. 10 Civ. 1645 (court approved 40% contingency fee in settlement); *Carmen Maidana v. La Esquina Criolla Restaurant, Inc.*, *et al*., E.D.N.Y. Case No. 11 Civ. 2606 (CBM) (CLP)).

With regards to attorneys' fees, Plaintiff's counsel and Plaintiff agreed that Plaintiff's counsel would fund the litigation and would receive a contingency of 33.3% of the gross recovery amount, in this case $16,337.70, after first deducting $989.88 in costs and expenses from the gross recovery amount.

When applying the percentage method to an award for attorney's fees, courts in this Circuit follow the trend of applying the lodestar method as a "cross-check" to ensure the reasonableness of the award. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Davis*, U.S. Dist. LEXIS 117082, 2011 WL 4793835, at *10 (*citing Goldberger*, 209 F.3d at 50). The lodestar is assessed by "multiplying the hours reasonably expended on the case by a reasonable hourly rate." Courts then consider factors such as: "(1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *20 (internal citations omitted). Courts commonly

award lodestar multipliers between two and six. *See id.* (discussing cases where lodestar multipliers between 2.09 and six were awarded).

Here, the multiplier would be less than the two to six range that courts commonly use. One court found that "[i]n recent years multipliers of between 3 and 4.5 have become common" and described 2.09 as "at the lower end of the range of multipliers awarded by courts within the Second Circuit." *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding multiplier of 4.65 "well within the range awarded by courts in this Circuit and courts throughout the country"); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("In this Court's opinion, a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases. The plaintiffs' bar is presumably selective enough with the cases they take on to win a recovery in at least half of them. A multiplier near 2 compensates them appropriately").

On this basis, we believe that this settlement is an equitable resolution to the instant matter.

Very truly yours,

Fausto E. Zapata, Jr.

C:   M. Restituyo
     File